**FILED & ENTERED**

**DEC 18 2019**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egonzale DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Robert Benjamin Sautter,<br><br><div align="right">Debtor.</div> | CHAPTER 7<br><br>Case No.:  1:19-bk-11301-MT<br>Adv No:   1:19-ap-01074-MT<br><br>**NOTICE OF TENTATIVE RULING RE MOTION FOR DEFAULT JUDGEMENT**<br><br>Date:          December 18, 2019<br>Time:          11:00 a.m.<br>Courtroom:  302 |
| Robert Benjamin Sautter<br><br><div align="right">Plaintiff,</div><br>  v.<br><br>Santa Fe General Construction, Inc., a California corporation; Jubilio Escalera, an individual; et al.<br><br><div align="right">Defendants.</div> | |

//

//

//

//

-1-

1   //

2         At the above date and time, the Court held a hearing on the Motion for Default

3   Judgment (the "Motion"), filed by Plaintiff, Robert Benjamin Sautter.  Appearances are

4   as noted on the record for the hearing.  At the hearing, the Court adopted its tentative

5   ruling on the Motion.  A copy of the Court's tentative ruling is attached to this cover

6   page.

7

8   //

9

10  //

11

12  //

13

14  //

15

16  //

17

18  //

19

20  //

21

22  //

23

24  //

25

26  //

27

28  //

1

2    Plaintiff Robert Sautter ("Plaintiff") filed a verified complaint against Santa Fe

3   General Construction, Inc., Julio Escalera, et. al.  The complaint alleged (1) fraud; (2) civil

4   conspiracy; (3) expungement of mechanic's liens; (4) quiet title; (5) cancellation of

5   instruments; (6) title slander; (7) elder abuse; (8) declaratory relief; and (9) injunctive

6   relief. The court entered default.  Santa Fe General Construction, Inc. ("Santa Fe") and

7   Jubilio Escalera (collectively, "Defendants") moved the court to set aside the entry of

8   default and resolve the issues on the merits.  Defendants' pleadings, which Escalera

9   revealed was prepared by paralegals, failed to provide support for their motion to set

10  aside entry of default and provided no specifics explaining what any meritorious defense

11  would be.  The court held a hearing and gave Escalera an opportunity to support his

request to set aside the entry of default.  The court then denied Defendants' motion.

12    Plaintiff now moves for a default judgment against Defendants ("Motion").   In

13  support of his Motion, Plaintiff filed supplemental points and authorities and a declaration.

14  Plaintiff moves for default judgment for the following cause of action:  (1) fraud; (2)

15  expungement of mechanic's liens; (3) quiet title; (4) cancellation of instruments; (5)

16  slander of title; and (6) elder abuse.  Defendants did not oppose the Motion.

17

Factual Background

18    Plaintiff, who is 88 years old, owns a property located in Sherman Oaks, California

19  ("Property").  Plaintiff and his wife purchased the Property and placed it in a trust.  When

20  Plaintiff's wife died, Plaintiff became the trust's sole trustee.

21    The events leading to this adversary proceeding arose when Plaintiff's home went

22  into foreclosure.  On October 26, 2016, a notice of default was issued against the

23  Property.  On January 30, 2017, a notice of trustee sale was executed against the

24  Property.  In or about February 2017, Plaintiff was introduced to Escalera, who allegedly

25  promised to assist Plaintiff in saving his home from foreclosure.

26

*The First Grant Deed*

27    On February 27, 2017, Plaintiff declared that under the influence and direction of

28  Escalera, who promised to assist with saving his home from foreclosure, Plaintiff

executed a grant deed (Grant Deed 1), which conveyed a one-eighth interest in the Property to Robert Sautter as co-trustee of the Kingsley Trust (Ex. E).  Grant Deed 1 is signed by "Robert B. Sautter," which is characterized by a shaky penmanship.

Plaintiff alleges that he has no affiliation with The Kingsley Trust, did not participate in the trust's formation, and is not aware of the named trustees whom he has never met.  Plaintiff believes that Lorena and Humberto are co-trustees, and declares that he has never met them, does not know them, and never conducted business with them.

Plaintiff alleges that on the day before the foreclosure sale, one of the trustees, Lorena, filed a chapter 13 bankruptcy petition without Plaintiff's authorization and knowledge.  Lorena included the Property as one of her assets.

*The Fire and The Four Mechanic's liens*

On May 25, 2017, Plaintiff declares that a devastating fire ravaged the Property, rendering uninhabitable.  The City of Los Angeles subsequently red-tagged the Property.

Plaintiff declares that starting on September 1, 2017, and until April 11, 2019, four mechanic's liens were recorded against the Property, clouding the Property's title.  Defendant Santa Fe, by and through Defendant Escalera, recorded the first, third, and fourth mechanic's liens (respectively, "ML1," "ML3," and "ML4").  ML1, ML3, and ML4 each indicate an identical amount of $141,231.  Plaintiff believes that ML3 and ML4 are merely duplicates of the other mechanic's liens.  All four mechanic's liens indicate that "The name(s) and address(es) of the owner(s) or reputed owner(s) of the real property is/are:  Humberto Lara, co-trustee of the Kingsley Trust." ML1, ML3, and ML4 each have Escalera's signature, as President of Santa Fe General Construction, Inc.

Plaintiff argues that the recording of ML3 and ML4 are improper ways to circumvent the statutory deadlines for a mechanics lien.  Plaintiff also declares that:  (1) no written or verbal contract supported the four mechanic's liens; (2) no preliminary notice preceded the four mechanic's liens as required by Cal. Civ. Code §§ 8100 et. seq. and 8410; and (3) there was no action to enforce the mechanic's liens through foreclosure within 90 days as required by Cal. Civ. Code § 8460.

*The Second Grant Deed*

Plaintiff declares that on February 11, 2019, without his knowledge or authorization, someone purporting to be him authorized the trustee of The Kingsley Trust to execute a second grant deed (Grant Deed 2).  Grant Deed 2 allegedly conveyed the Property's title to a White.   (Ex. J). Plaintiff further declares that he never agreed to voluntarily transfer any interest in the Property and that he would not have transferred any interest had he known Defendants' motive to steal his home.  Plaintiff declares that he and his counsel demanded Defendants to release the mechanic's liens and cancel the grant deeds, but Defendants did not acquiesce.

Default Judgment

Default judgment is controlled by F.R. Civ. Pro. 55(b), applicable in bankruptcy adversary proceedings through FRBP 7055. To determine whether the court should enter default judgment, the court may consider (1) possibility of prejudice to the plaintiff, (2) merits of plaintiff's substantive claims; (3) sufficiency of the complaint, (4) sum of money at stake in the action, (5) possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) strong policy favoring decisions on the merits.  See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)(citing 6 Moore's Federal Practice, ¶ 550-05[2], at 55-24 to 55-26.  Default judgments are ordinarily disfavored. Id. at 1472.

"A party seeking a default judgment must state a claim upon which it may recover." Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing PepsiCo Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172 (C.D. Cal. 2002)). The general rule of law is that upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). In determining the appropriate sum for a default judgment, a court may rely on the affidavits or documentary evidence submitted by a plaintiff or order a full evidentiary hearing.  Fed. R. Civ. P. 55(b)(2); *see also PepsiCo Inc.*, 238 F. Supp. 2d at 1175 ("[T]he plaintiff is required to provide proof of all damages sought in the complaint.").

1

2    <u>Fraud</u>

3        "The elements of fraud, which give rise to the tort action for deceit, are (1)

4    misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge

5    of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance;

6    and (5) resulting damage." <u>Lazar v. Superior Court</u>, 909 P.2d 981, 984 (Cal. 1996). To

7    maintain any fraud action, a plaintiff must show that he or she changed position in reliance

8    on the alleged fraud and suffered damages by the change of position. <u>Cal. Civ. Code §</u>

9    <u>1709</u>.

10   *Whether Defendants Engaged in Misrepresentation*

11       Plaintiff alleged sufficient facts with particularity to find that Defendants engaged

12   in misrepresentation as to Grant Deed 1. Plaintiff alleged that on February 27, 2017,

13   Escalera promised to assist Plaintiff with saving his home from foreclosure. Escalera

14   allegedly influenced and directed Plaintiff, who declares being in his 80s, to execute Grant

15   Deed 1. Grant Deed 1 conveyed a fractional interest in the Property to "Robert Sautter

16   as co-trustee of The Kingsley Trust." Plaintiff declares that he is not affiliated with The

17   Kingsley Trust; he never participated in forming The Kingsley Trust; and he does not know

     the co-trustees and never met them.

18       Plaintiff also alleged particular facts surrounding Defendants misrepresentation as

19   to Grant Deed 2. Plaintiff declares that on February 11, 2019, without his knowledge or

20   authorization, someone purporting to be him authorized the trustee of The Kingsley Trust

21   to execute Grant Deed 2. Grant Deed 2 purported to convey the Property's title to a

22   person named "White." However, Plaintiff alleges that he does not know White, did not

23   sign Grant Deed 2 and did not authorize anyone to sign on his behalf.

24       The following signature specimens are from Plaintiff's Declaration, Grant Deed 1,

25   and Grant Deed 2.

26

27   Signature on Plaintiff's declaration:

28

ROBERT BENJAMIN SAUTTER

Signature on Grant Deed 1

Robert B. Sautter, Co-Trustee of The Misue Sautter Trust
Dated October 29, 2002

Signature on Grant Deed 2

THE KINGSLEY TRUST

By: _____

ROBERT B. SAUTTER, Authorized Trustee

Plaintiff does not deny signing Grant Deed 1 but denies signing Grant Deed 2. The purported signature on Grant Deed 2 varies drastically from the signatures in Plaintiff's Declaration and Grant Deed 1 in that the Grant Deed 2 signature lacks the shaky penmanship characteristic of the other two signatures. This supports Plaintiff's statement that the Grant Deed 2 signature is not his. These circumstances surrounding the execution of Grant Deed 2 are sufficient to establish that Defendants engaged in misrepresentation.

Once Plaintiff purportedly became a co-trustee of The Kingsley Trust, Escalera signed and executed three mechanic's liens, ML1, ML3, and ML4, as president of Santa Fe General Construction. The three mechanic's liens indicated that the owner or reputed owner of the Property as "Humberto Lara, co-trustee of the Kingsley Trust." Plaintiff was excluded as the owner of the Property. However, there is no evidence in the record that the Property was foreclosed and that Plaintiff no longer had an interest in the Property. Therefore, Escalera's repeated act of signing the mechanic's lien and declaring Humberto the owner is a clear misrepresentation of the real ownership interest in the Property.

In conclusion, Plaintiff has provided specific factual allegations, which is supported by a declaration, and exhibits of Grant Deed 1, Grant Deed 2, and the mechanic's liens containing Escalera's signature, to establish that Defendants' engaged in misrepresentation.

*Whether Defendants Knew of the Misrepresentation*

Plaintiff declares that Escalera himself approached Plaintiff on February 27, 2017, promising to help Plaintiff prevent the foreclosure, and convincing Plaintiff to execute Grant Deed 1 as co-trustee of The Kingsley Trust.  Escalera had an opportunity to deny these allegations, yet failed to do so. The court explained to Defendant that he needed to present the facts of any meritorious defense, but he did not do so. Plaintiff's factual allegations are thus sufficiently specific for a finding that Escalera knew of the misrepresentation in executing Grant Deed 1.

Plaintiff has also alleged specific facts to show Escalera's knowledge of the falsity of the mechanic's liens.  Escalera etched his signature on the three mechanic's liens — ML1, ML3, and ML4  — and he does not deny signing them. Escalera's knowledge of the misrepresentation is thus established.

*Whether Defendants Intended to Defraud Plaintiff*

Plaintiff has alleged sufficient facts to show that Defendants intended to defraud him.  Plaintiff alleged that Escalera convinced him to execute Grant Deed 1 as co-trustee of The Kingsley Trust despite Plaintiff allegedly having no knowledge of The Kingsley Trust and its co-trustees and never agreeing to voluntarily transfer any interest in the Property.  Defendants' intent to defraud Plaintiff is even more transparent in executing the three mechanic's liens because Escalera's etched his signature when declaring Humberto as co-trustee of The Kingsley Trust while concealing Plaintiff's ownership interest.

*Whether Plaintiff Justifiably Relied on Defendants' Misrepresentation*

Plaintiff states that he executed Grant Deed 1 under the direction of Escalera after Escalera promised to save his home from foreclosure. This element of fraud is satisfied.

1

2

*Whether Plaintiff Suffered Damages*

Plaintiff alleges that Defendants' fraud caused him actual damages, lost equity in the Property, and attorney's fees for work attempting to unravel the fraudulent scheme. This element of fraud is satisfied.

After having determined that Plaintiff has stated sufficient facts with particularity to establish fraud, the court will now analyze whether it should exercise its discretion and enter default judgment as to fraud.

Plaintiff will likely be prejudiced if default is not entered because Defendants have not responded to this Motion, and Plaintiff has already expended resources in this action and has no other means of obtaining relief. *See* PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (finding this factor weighed in the plaintiffs' favor because they "would likely be without other recourse for recovery" if the court does not grant default judgment). This factor weighs in favor of granting default judgment. To warrant default judgment, the allegations in the complaint must be sufficient to state a claim upon which a plaintiff can recover. Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). Plaintiff's claims have merit because Plaintiff alleged sufficient facts with particularity to reveal Defendants' fraudulent conduct.

Plaintiff provided a declaration with specific factual allegations; exhibits of Grant Deed 1 and Grant Deed 2; and exhibits of the four mechanic's liens. Plaintiff's pleadings are sufficient, and this factor also weighs in favor of entering default judgment. This action involves real property. ML1, ML3, and ML4 each indicate an amount of $141,231. ML2 indicates an amount of $91,250. The Notice of Default is allegedly for a $1,476,689.02 loan on the Property, which indicates the Property's value. However, Plaintiff alleged that fire devastated the Property, so the Property's value may be less than the amount indicated in the Notice of Default. Although the amount has not yet been established, Plaintiff is asking for actual damages, lost equity in the Property, attorney's fees, exemplary or punitive damages, and treble damages. The sum of money at stake in this action is therefore high, but not unreasonable given that real property is involved. This factor disfavors granting a default judgment, but does not outweigh all the other factors.

The possibility of a dispute concerning the material facts appears unlikely because Defendant failed to provide any defenses before entry of default and did not oppose this Motion. Excusable neglect did not cause the default because Defendants had notice of the adversary complaint, this Motion, and Plaintiff's supplemental pleading and declaration. In fact, Defendant appeared to try and vacate entry of default and still failed to come forward with any meritorious defense.

Although there is a strong policy favoring decisions on the merits, the court finds that the sufficiency of Plaintiff's allegations and the other Eitel factors outweighs this policy. The court finds it sound to exercise its discretion and GRANT Plaintiff's Motion for default judgment as to the fraud claim.

*Remedies*

Plaintiff seeks actual damages and attorney's fees.  Plaintiff also asks this court to cancel the two grant deeds and four mechanic's liens, which cloud the Property's title to restore full title to Plaintiff. A plaintiff must prove all damages sought.  Fed. R. Civ. P. 54(c).  The damages and remedies Plaintiff seek require further evidence.  Such evidence must be filed within 60 days of this ruling alomg with the proposed judgment

Expungement of Mechanic's Liens

Under Cal. Civ. Code §8460, a claimant must commence an action to enforce a lien within 90 days after recording the lien claim.  If the claimant does not commence an action to enforce the lien within the required time, the lien claim expires and is unenforceable. Cal. Civ. Code § 8480(a) instructs that the property owner subject to a lien claim may petition the court for an order to release the property from the lien claim if the claimant has not commenced an action to enforce the lien within the time provided in § 8460.

Plaintiff's ownership interest in the Property is evidenced by a grant deed dated February 22, 1978 to Robert Sautter and Misue Sautter as joint tenants (Motion, Ex. A). Plaintiff also alleges that in October 2002, he and his wife placed the Property in the Misue Sautter Trust with him and his wife as co-trustees.

On July 16, 2005, Misue Sautter, as trustee for the Misue Sautter Trust, executed a deed of trust to secure a reverse mortgage. (Motion, Ex. B). On July 2, 2016, Plaintiff purportedly granted a fractional 1/8 interest to the Property to himself as co-trustee of The Kingsley Trust after Escalera allegedly influenced and directed him with a promise to save his home from foreclosure. On October 26, 2016, a notice of default was issued to the Misue Sautter Trust.

Nothing in the record indicates that the Property is foreclosed and that Plaintiff no longer has a property interest. Additionally, nothing in the record shows that Defendants took action to enforce the four mechanic's liens within 90 days after recording the mechanic's liens. Under Cal. Civ. Code §8460, the mechanic's liens therefore expired and are unenforceable. Moreover, under Cal. Civ. Code § 8480(a), this court may order the mechanic's liens expunged.

Plaintiff's Motion is sufficiently detailed because Plaintiff provided a declaration of the facts surrounding the four mechanic's liens and exhibits of the mechanic's liens. The possibility of a dispute concerning the mechanic's liens is unlikely for the same reasons discussed earlier. As discussed above, Defendants were given notice and an opportunity to be heard yet failed to oppose this Motion.

A decision to grant default judgment to expunge the four mechanic's liens is not against policy because Plaintiff provided evidence of his ownership interest in the Property and the four mechanic's liens, and Defendant does not oppose despite being provided notice.

On balance, granting default judgment to expunge the four mechanic's liens is appropriate.

Plaintiff's attorney seeks attorney's fees from this action. Plaintiff's attorney must provide proof in support of this demand.

Quiet Title

The purpose of quiet title is to establish title against adverse claims to an interest in property. *See* Cal. Code Civ. Proc. § 760.020. Under Cal. Code Civ. Proc. § 761.020, a complaint must be verified and include certain elements which are provided here. California courts require an evidentiary hearing for quiet title actions, but the evidentiary and procedural protections provided here have been deemed sufficient. Citimortgage,

Inc. v. Wright, No. 16-2920, 2018 U.S. Dist. LEXIS 228773, at *8 n.7 (April 6, 2018).  The court has required evidence to be submitted and has given defendant an opportunity to provide any meritorious defense to that evidence.

The court quiets title in Plaintiff based on all evidence detailed elsewhere.

Cancellation of Instruments

Plaintiff seeks to cancel Grant Deed 1, Grant Deed 2, and the four mechanic's liens.  Under California law, a court may cancel a written instrument if "there is a reasonable apprehension that if left outstanding, it may cause serious injury to a person against whom it is void or voidable."  Cal. Civ. Code § 3412; *see* Rockridge Trust v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1159 (N.D. Cal. 2013)(stating that "[t]he Court may order cancellation of an invalid written instrument that is void or voidable.").  "To plead a cause of action for cancellation of instrument, plaintiff must show that he will be injured or prejudiced if the instrument is not canceled, and that such instrument is void or voidable."  Zendejas v. GMAC Wholesale Mortg. Corp., No. 1:10-CV-00184 OWW GSA, 2010 U.S. Dist. LEXIS 64903, at *7 (June 29, 2010).

Plaintiff is 87 years old and the mechanic's lien and grant deeds are interfering with his title to the Property and depriving him of his home.  Plaintiff has thus stated sufficient facts to show injury.  Moreover, as discussed above, Plaintiff has alleged sufficient facts to show that Grant Deed 1 and 2 and the four mechanic's liens are fraudulent.  The court grants default judgment to cancel Grant Deed 1, Grant Deed 2, and the four mechanic's liens.

Slander of Title

Slander of title is a (1) publication; (2) without privilege or justification; (3) which is false; and (4) which causes direct and immediate pecuniary loss.  Alpha & Omega Development, LP v. Whillock Contracting, Inc., 132 Cal. Rptr. 3d 781, 786 (Cal. Ct. App. 2011).  Slander of title occurs when a person without privilege publishes untrue and disparaging statements about the property of another that would lead a reasonable person to foresee that a prospective purchaser or lessee might abandon his intentions. M.F. Farming Co. v. Couch Distributing Co., Inc., 143 Cal. Rptr. 3d 160, 174-75 (Cal. Ct.

App. 2012).  Slander of title is an invasion of the vendibility of property.  Id.  Actual malice or ill will is unnecessary.  Id.

Damages for slander of title consist of loss of a prospective buyer.  Id.  For a statement to be disparaging, it does not need to deny title in another; any unfounded claim of an interest in the property, which throws doubt on its ownership interest, is sufficient.  Id.  It is not necessary to show that a pending deal was hampered or prevented.  Id.  There can be damages for the depreciation in the market value of the property.  Id.

Plaintiff has alleged sufficient facts to establish slander of title.  Plaintiff has shown that Defendants committed slander of title because Defendants willfully, wrongfully, without justification, and without privilege, published or caused to be recorded Grant Deed 1, Grant Deed 2, and the four mechanic's liens.  Plaintiff further showed that these written instruments are void or false and have cast doubt on Plaintiff's title to the Property, which adversely affected his ability to sell or refinance the Property.  In addition, Plaintiff argues that the publication and recording of these written instruments without his authorization caused the market value of the Property to depreciate, restrict Plaintiff's full use and enjoyment and right to develop the Property, and directly impairs the Property's vendibility in the open market.  Plaintiff also alleges that he suffered damages and that he continues to suffer damages as a direct and proximate result of the alleged slander of title. The court finds that granting default judgment as to slander of title is appropriate.

Elder Abuse

Plaintiff alleges that Defendants committed elder abuse under the California Welfare and Institutions Code § 15600 et. seq. (The Elder Abuse and Dependent Adult Protection Act) by causing Plaintiff physical harm and/or pain and/or mental suffering. California Welfare & Institutions Code § 15610.27 defines an elder as "any person residing in this state, 65 years of age or older.  To bring a claim for elder abuse, the plaintiff must have been sixty-five when the alleged financial abuse occurred.  See Paslay v. State Farm Gen. Ins. Co., 248 Cal. App. 4th 639, 656, 203 Cal. Rptr. 3d 785 & n.14 (2016).

Plaintiff's proof on this cause of action is sufficient to satisfy the Eitel factors. Plaintiff alleges that at the time of Defendants' actions, he was 87 years old and an "elder"

as defined by § 15610.27, and Defendants knew of Plaintiff's age.  Moreover, Plaintiff sufficiently alleged facts surrounding the alleged abuse, which the court found involved Defendants' fraud and slander of title against Plaintiff.  Defendants did not oppose these allegations.

Plaintiff also alleges that Defendants elder abuse resulted in Plaintiff's physical harm, pain, and/or mental suffering.  Plaintiff therefore seeks general and economic damages, including for mental distress; attorney's fees and costs for this litigation; fees and costs under § 156657.5(a); exemplary and punitive damages for recklessness, oppression, fraud, and malice under § 15657.5 and Cal. Civ. Code § 3294; and treble damages under Cal. Civ. Code § 3345. A plaintiff must prove all damages sought in the complaint. Fed. R. Civ. P. 54(c).  Further evidence  must be submitted within 60 days to prove-up Plaintiff's damages resulting from elder abuse.

For the reasons discussed above, Plaintiff's Motion for default judgment is GRANTED in full.

###

Date: December 18, 2019

_Maureen A Tighe_
Maureen A. Tighe
United States Bankruptcy Judge